# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **GRADY JACKSON** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **v.** | ) | **1:07-CV-0939-GET** |
| | ) | |
| **ATLANTA FALCONS** | ) | |
| **FOOTBALL CLUB,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF GRADY JACKSON'S
## MOTION TO REMAND AND FOR COSTS
## ON GROUNDS OF LACK OF FEDERAL QUESTION
### [Under 28 U.S.C. §1447(c)]

Plaintiff GRADY JACKSON ("Jackson") hereby moves the Court, pursuant

to 28 U.S.C. §1447(c), for an order remanding the matter to the State Court of

Fulton County and for attorney's fees and costs.

For grounds, Jackson states as follows:

Jackson commenced this action in the State Court of Fulton County, State of

Georgia, against Defendant ATLANTA FALCONS FOOTBALL CLUB, LLC

("Falcons") alleging Invasion of Privacy (Count I) and Defamation (Count II)

arising out of release of Jackson's private personal health information and

inaccurate statements by Defendant Falcons personnel to the national press. At the

time, Jackson was an unrestricted free agent. The national press publicly reported

Dockets.Justia.com

that Jackson had "failed" his physical and that there were concerns about his heart health.

Defendant Falcons filed its Notice of Removal on April 26, 2007, claiming federal question jurisdiction pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. §§141 et seq. ("LMRA") and 28 U.S.C. §1331.

A removing defendant has the burden of proving the existence of federal jurisdiction. *Tapescott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996). Removability should be determined according to the plaintiff's pleading at the time of the petition for removal. *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983). Under the so-called "well-pleaded complaint rule," a claim "arises under" federal law where Plaintiff's complaint raises federal issues. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 95 L. Ed. 2d 55, 107 S. Ct. 1542 (1987); *Belasco v. W.K.P. Wilson and Sons, Inc.*, 833 F.2d 277, 281 (11th Cir. 1987).

Plaintiff denies the allegations in the Notice of Removal that this Court has original jurisdiction over the action pursuant to 28 U.S.C. §1331, and denies that Plaintiff's claims involve a federal question. Plaintiff further denies the allegations in the Notice of Removal that "the resolution of Plaintiff's claims requires the interpretation of" the grievance provisions or the remedies of the CBA and further denies the allegations that Plaintiff's claims are "inextricably intertwined" with the

CBA. In addition, Plaintiff denies that his claims arise under Section 301 and other provisions of the LMRA, and further denies that his claims are preempted by Section 301 of the LMRA.

Defendant Falcons may attempt to insert "clarification" or alleged "requirements" of the CBA as defenses to Plaintiff's action; however, as set forth above, under the long-established "well-pleaded complaint rule," removal must be based on a federal question presented on the face of the plaintiff's properly pleaded complaint. A case may not be removed to federal court on the basis of a federal defense, even if the defense is anticipated in plaintiff's complaint. Preemption by federal law is a defense which does not give rise to federal question jurisdiction [*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 96 L. Ed. 2d 318, 107 S. Ct. 2425 (1987); *Belasco v. W.K.P. Wilson and Sons, Inc.*, *supra*, 833 F.2d at 282], unless the complaint raises "a select type of claim that has been singled out by Congress for federal preemption." [*Metropolitan Life Ins. Co. v. Taylor, supra*, 481 U.S at 63-64, 95 L. Ed. 2d 55, 107 S. Ct. 1542 (1987)].Plaintiff denies that there is any federal defense in this case, and further denies that the federal issues raised by Defendant Falcons are relevant to any question at issue in this case.

This Court is without original jurisdiction over the matters alleged in all counts (I and II) of the Complaint.

The case was improperly removed in that all causes of action are properly within the jurisdiction of the State Court of Fulton County, State of Georgia, as being asserted under the laws of the State of Georgia.

The cause herein was improperly removed in that the matters asserted in the Complaint filed in the State Court of Fulton County, State of Georgia, did not represent any claim or right arising under the Constitution, treaties or laws of the United States.

Plaintiff further moves the Court to order the payment to the Plaintiff by the removing defendant (the Falcons) of all costs, including attorney's fees, incurred in the removed action, including fees and costs incurred by reason of the removal proceedings.  Jackson was forced to respond to Defendant Falcons' unwarranted Notice of Removal, as well as its Motion filed under FRCP Rule 12(b)(1), and is entitled to reasonable attorney's fees and costs associated with this Motion and the necessity of opposing the 12(b)(1) Motion pending remand.

In support of his Motion, Jackson relies on Plaintiff's First Amended Complaint, the Falcons' Answer thereto, the Falcons' Notice of Removal, and the Memorandum of Law filed herewith.

WHEREFORE, Plaintiff GRADY JACKSON respectfully requests that this Court remand the above-styled action to the State Court of Fulton County, State of Georgia for further proceedings, in accordance with the requirements of 28 U.S.C.

§1447(c), and for an order awarding Plaintiff his reasonable costs and attorney's fees incurred in this Court by reason of the removal and in the removed case pending remand.

This 21st day of May, 2007.

Respectfully submitted,

s/Kenan G. Loomis
Kenan G. Loomis, Esquire
Georgia Bar No. 457865
COZEN O'CONNOR
SunTrust Plaza, Suite 2200
303 Peachtree Street, N.E.
Atlanta, Georgia 30308
Telephone: (404) 572-2000
Facsimile: (404) 572-2199
Attorney for Plaintiff

## MEMORANDUM OF LAW

### I.    INTRODUCTION

Plaintiff Grady Jackson is a professional NFL football player under contract with Defendant Falcons, and is considered to be one of the premiere Defensive Tackles in the National Football League. Jackson's career began over ten years ago, at the Oakland Raiders Football Club, and he has also played for the New Orleans Saints and the Green Bay Packers. In March 2006, Jackson was an unrestricted free agent looking for a new contract and was invited to visit the Defendant Atlanta Falcons.

Jackson visited the Falcons on March 24, 2006. The Falcons arranged various tests and medical examination to assess his physical condition. One of the examining physicians (Dr. Brown) suggested to the team that a further work-up by a cardiologist be obtained. The Falcons told Jackson and his sports agent, Angelo Wright, that they had concerns regarding the heart test and wanted to see further testing before a decision was made. No one associated with the Falcons or any of the health care providers stated or even suggested to Jackson that he had "failed" his medical or physical examination or that the team was not interested in signing him. Both Jackson and his agent were left with the impression that a decision had not been made, one way or the other, regarding whether the Falcons would sign Plaintiff to play for the team.

Two days later (March 26), Falcons personnel told a reporter for KFFL (a prominent national sports wire service and internet site) that Jackson had "failed" his physical and released private personal health information concerning Jackson. That same day, KFFL reported publicly that Jackson had "failed" his physical with the Falcons.  Falcons personnel made similar statements to a writer for the Sporting News (a prominent weekly sports publication).  The following week, an article in the Sporting News reported to the general public that Jackson had "failed" his physical.  The story (that Plaintiff had "failed" his physical with the Atlanta Falcons) was picked up by the national press and republished in numerous venues.  The press reports included private personal health information regarding Jackson's (alleged) heart problems.

Through these press reports, Jackson learned that he had "heart problems;" as a result, Jackson and his wife became very concerned about his health.  The press reports also adversely affected interest of other NFL teams in signing Jackson; when visiting other teams, Jackson was questioned about his "heart condition" and two teams conducted extensive cardiology examinations.  Jackson's agent eventually opened negotiations with the Falcons and in August 2006, nearly five months after he first visited the Falcons, Jackson signed a three-year contract. In the 2006 season, Jackson was the only member of the Falcon's defensive line to start all 16 games, and he led all defensive linemen in tackles for loss.  After the

end of the season, Jackson filed this action for invasion of privacy and defamation in State Court.

The Falcons removed Jackson's suit to this Court by asserting federal question jurisdiction under LMRA §301, claiming that resolution of Jackson's claims require interpretation of the grievance provisions and remedies in the NFL Collective Bargaining Agreement ("CBA"), as a result of which Defendant Falcons claim that this Court has original jurisdiction pursuant to 28 U.S.C. §1331. Jackson brings this motion because the Falcon's claimed basis for jurisdiction is unfounded.

## II.    LEGAL STANDARD

As a general rule, an action is removable to a federal court only if it might have been brought there originally. 28 U.S.C. §§ 1441(a).  Because removal ousts a state court of jurisdiction, "due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the (removal) statute has defined." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109 (1941).

Moreover, removal statutes are narrowly construed.  *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095; accord, *Continental Carriers, Inc. v. Roger Goodpasture and Indiana Refrigeration Lines, Inc.*, 169 F.Supp. 602, 604 (M.D. Ga. 1959). United States District Courts are courts of limited jurisdiction.  Removal authority

is purely statutory. Thus, the presumption is against jurisdiction, and **jurisdiction must always appear affirmatively**. *Ibid* (emphasis added). Removal should not be allowed where there is any doubt as to the right of removal. *Ibid*.

## *III.  THE  FALCONS  ARE  REQUIRED  TO  PROVE  THAT JURISDICTION EXISTS*

Consistent with the limited nature of federal jurisdiction, the burden of establishing federal jurisdiction is on the party seeking removal. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (U.S. 1992); *Lowery v. Alabama Power Co.*, ___ F.3d ___, 2007 WL 1062769 (11th Cir April 11, 2007). The removal statute is strictly construed against removal jurisdiction. *Burns v. Windsor Ins. Co.*, 31 F.3d 1095 (11th Cir. 1994).

The Falcons have the right to remove this case if federal question jurisdiction exists under 28 U.S.C. §1331. Jurisdictional facts are assessed on the basis of plaintiff's complaint as of the time of removal. *Burns v. Windsor Ins. Co., supra*, 31 F.3d at fn.13 (11th Cir. 1994), citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537, 59 S.Ct. 347, 348, 93 L.Ed. 334 (1939). This is known as the Well-Plead Complaint Rule. See, e.g., *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 95 L.Ed. 2d 55, 107 S.Ct. 1542 (1987); *Brown v. Connecticut General Life Ins. Co.*, 934 F.2d 1193, 1195-96 (11th Cir. 1991).

> "Federal courts are courts of limited jurisdiction. While a defendant does have a right, given by statute, to remove in certain situations, plaintiff is still the master of his own claim."

Burns v. Windsor Ins. Co., supra, 31 F.3d at 1095. Also see, Caterpillar, Inc. v. Williams, 482 U.S. 386 (1987).

The burden of proving subject matter jurisdiction is on the removing party (Defendant Falcons).  As is set forth in Section II, above, the Falcons have not met this burden.  If there is any doubt, the Court must remand the case.

> "Defendant's right to remove and plaintiff's right to choose his forum is **not on equal footing**; . . . removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand."

Burns v. Windsor Ins. Co., supra, 31 F.3d at 1095; accord, Continental Carriers, Inc. v. Roger Goodpasture and Indiana Refrigeration Lines, Inc., supra, 169 F.Supp. at 604, where the District Court noted that "removal should not be allowed where there is any doubt as to the right of removal."

Since the Falcons do not meet their burden (as set forth in Section III, below), the Court must remand the case to State Court.

## IV.    THERE IS NO FEDERAL QUESTION JURISDICTION

The Falcons claim removal jurisdiction based on the federal question jurisdiction of 28 U.S.C. §1331.  Under 28 U.S.C. §1331, the federal courts have

original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

An action "arises under" federal law within the meaning of Section 1331 if either: (1) federal law creates the cause of action, or (2) the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28, (1983).  A state-law claim may be treated as one "arising under" federal law only where the vindication of the state law right necessarily turns on some construction of federal law.  *Id*. at 9.

Jackson's complaint, however, pleads purely state law claims – for invasion of privacy (Count I) and for defamation (Count II); he does not plead any claim that arises under, or is preempted by, federal law.

A.    The Preemption Anaylsis Under LMRA §301

The Falcons premise their claim of original federal jurisdiction is Section 301 of the Labor Management Relations Act ("LMRA") and the NFL Collective Bargaining Agreement ("CBA") between the NFL Players Association and the member teams of the NFL (including the Falcons).  Section 301 provides, in relevant part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

Jackson's claims, however, do not arise under the CBA; his claims are independent state law tort claims for invasion of privacy and defamation.

The preemptive effect of § 301 was first analyzed in *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962), where the Supreme Court stated that the "dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute [so that] issues raised in suits of a kind covered by § 301 [are] to be decided according to the precepts of federal labor policy." The Court concluded that "in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." *Id.*, at 104, quoted in *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985)

The preemptive effect of §301 was further analyzed and discussed in the seminal cases of *Allis-Chalmers Corp. v. Lueck, supra*, 471 U.S. at 211, 105 S. Ct. at 1911, 85 L. Ed. 2d 206 (1985) and *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988). In *Lingle*, the Court noted that the preemption doctrine exists to "ensure uniform interpretation of

collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Id*. at 404, 108 S. Ct. at 1880.

In *Allis-Chalmers*, the Court made it clear that §301 preemption applies not only to contract claims, but also to tort claims, holding that:

> "Questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort."

*Id.* at 217, 105 S.Ct. 1904; see, also, *Livadas v. Bradshaw*, 512 U.S. 107, 122-24, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994).

The *Allis-Chalmers* court went on to note, however, that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by § 301 . . . ." *Allis-Chalmers Corp. v. Lueck, supra*, 471 U.S. at 211, 105 S. Ct. at 1911.[1]  Those tort claims that are "independent" of the collective bargaining agreement are not subject to preemption. *Lingle v. Norge Division of Magic Chef, Inc. supra*, 486 U.S. at 409-

---

[1] Indeed, the Supreme Court noted that even under the LMRA, not every dispute concerning employment is completely preempted, even if it is asserted by someone covered by a collective bargaining agreement governed by the LMRA. *Caterpillar, Inc. v. Williams, supra,* 482 U.S. at 396 n.10 [clarifying that not all employment-related matters involving unionized employees must be resolved through collective bargaining and governed by federal common law].

10, 108 S.Ct. 1877; *Allis-Chalmers Corp. v. Lueck, supra*, 471 U.S. at 213, 105 S.Ct. 1904.

A state-law claim is preempted by §301 of the LMRA if "evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Allis-Chalmers Corp. v. Lueck, supra*, 471 U.S. at 213, 105 S.Ct. at 1912. Stated another way, the state-law claim is preempted "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis-Chalmers Corp. v. Lueck, supra*, 471 U.S. at 220, 105 S.Ct. at 1916.

In order to determine whether Jackson's state tort law claims arise under, or require interpretation of, the terms of the CBA, the Court must first look to the elements of the state-law claim. *Lightning v. Roadway Express*, 60 F.3d 1551, 1557 (11th Cir. 1995); *Lingle v. Norge Division of Magic Chef, Inc. supra*, 486 U.S. at 406-07, 108 S. Ct. at 1881-82. See, also, *Agee v. Huggins*, 888 F. Supp. 1573, 1579 (D. Ga. 1995)

**B.    Plaintiffs Claims Are Independent State Tort Claims That Do Not Arise Under LMRA §301 And Are Not Preempted By It**

The Court must first "ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law." See *DeCoe v. General Motors Corp.*, 32 F.3d 212, 216 (6th Cir.1994). Here, Jackson's

complaint alleges state-law tort claims for (I) invasion of privacy and (II) defamation.

   1. Count I (Invasion of Privacy)

  Count I of Plaintiff's complaint alleges a state-law tort claim for invasion of privacy based on disclosure of Jackson's private personal health information to the national press by Falcons' personnel. In Georgia, privacy is recognized as a fundamental right derived from natural law. It is said that each individual instinctively resents any encroachment by the public upon his rights which are of a private nature. *King v. State* 272 Ga. 788, 789-790, 535 S.E.2d 492 (2000). The right of privacy guaranteed by the Georgia Constitution (Art. 1, § 1, Par. 1) is far more extensive than that protected by the Constitution of the United States. *Powell v. State*, 270 Ga. 327, 329, 510 S.E.2d 18 (1998); *King v. State, supra*, 272 Ga. at 789.

  In *Cabaniss v. Hipsley*, 114 Ga.App. 367, 370, 151 S.E.2d 496 (1966), the Georgia Court of Appeals recognized that the tort of invasion of privacy is in reality a complex of four loosely related torts, two of which are alleged by Jackson in Count I: (1) public disclosure of embarrassing private facts; and (2) publicity which places him in a false light in the public eye. The elements of a claim of disclosure of embarrassing private facts are: (1) the disclosure of private facts must be a public disclosure; (2) the facts disclosed to the public must be private,

secluded or secret facts and not public ones; and (3) the matter made public must be offensive and objectionable to a reasonable man of ordinary sensibilities under the circumstances.   *Napper v. Ga. Television Co.*, 257 Ga. 156, 161, 356 S.E.2d 640 (1987); *Nelson v. Glynn-Brunswick Hosp. Authority*, 257 Ga.App. 571, 578 (2002).   The elements of a claim of false light are: (1) false publicity depicted plaintiff as something or someone which he is not; and (2) that the false light in which he was placed would be highly offensive to a reasonable person.  *Assn. Svcs. v. Smith*, 249 Ga.App. 629, 633-4, 549 S.E.2d 454 (2001) ); *Nelson v. Glynn-Brunswick Hosp. Authority, supra*, 257 Ga.App. at 578.

It is apparent from the face of the Complaint that the invasion of privacy claim alleged in Count I arises independently under state law, and does not arise under the CBA.

### 2.    Count II (Defamation)

Count II of Plaintiff's complaint alleges a state-law tort claim for defamation based on false statements made by Falcons' personnel to the press.  Defamation (slander and libel) derive from Georgia statutory law, not from the CBA.

In *Bartholomew v. AGL Res., Inc.*, 361 F.3d 1333 (11th Cir. 2004), the Eleventh Circuit analyzed LMRA §301 preemption in the context of a defamation claim under Georgia state law.  Under Georgia law, an oral defamation action lies when (1) a defendant makes charges against the plaintiff in reference to his trade,

office, or profession, if such charges are calculated to injure him therein; (2) the charge is false; (3) the charge is made with malice; and (4) the communication is not privileged. Ga. Code Ann. §§ 51-5-4(a)(3), 51-5-5, 51-5-6, 51-5-7. *Id.*, at 1342.

In *Bartholomew*, plaintiff employees sued based on alleged statements made by the employer to a contractor after plaintiffs were terminated. The *Bartholomew* concluded that the defamation claims there were not preempted by the LMRA to the extent that they were based upon defamatory statements that occurred after their termination. *Id.*, at 1342. It reached that conclusion because analysis of the defamation claims under Georgia law was "not substantially dependent upon the terms of the collective-bargaining agreement. Simply stated, the elements of the plaintiffs' post-termination defamation claim did not turn upon the terms of their labor contract." *Ibid.*

The *Bartholomew* analysis is equally apt here. The elements of Jackson's defamation claim do not require interpretation of, or turn upon the terms of, the CBA. Thus, there is no preemption of the defamation claim under LMRA §301.

Thus facts of this case contrast with cases where a defamation claim has been found preempted. For example, in *DeCoe v. General Motors Corp.*, 32 F.3d 212 (6th Cir.1994), the employee's state law defamation claims (that the employer repeated false accusations that he had sexually harassed co-workers) were held

preempted because the statements were made while investigating the accusations (which the collective bargaining agreement required the employer to do) or in grievance proceedings, and the labor contract was implicated. In *Agee v. Huggins*, 888 F. Supp. 1573 (D. Ga. 1995) (which followed the analysis employed in *DeCoe*), the plaintiff's defamation claim against his supervisor was held preempted because the statements (which related to plaintiff's job performance and were allegedly made to retaliate for grievances filed by the plaintiff) and it could not be determined whether the statements were tortuous without examining whether the supervisor's conduct (statements) were required under the collective bargaining agreement or its grievance procedure.

On the other hand, in cases where the defamation claim was based on communications outside the grievance process or in communications not authorized by the collective bargaining agreement, courts have found the claims not preempted since their resolution does not depend on the terms of the labor contract. See, e.g., *Tellez v. Pacific Gas & Elec. Co., Inc.*, 817 F.2d 536, 538.

Here, as with Count I, the defamation claim arises independently under state law. The CBA is not implicated in any way, and resolution of the claims is not substantially dependent on interpretation of any of terms of CBA (which is largely silent on topic of invasion of privacy and defamation). There is therefore no preemption.

Accordingly, federal question jurisdiction does not exist and the case should be remanded to the State Court of Fulton County.

### C.    *A Federal Defense Does Not Create Federal Question Jurisdiction*

As noted above, Jackson's State Court complaint does not plead any claim arising under, or preempted by, federal law.  The mere fact that the Falcons may assert a defense arising out of federal law is not sufficient to support removal.

The courts have long held that "the presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); see also *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152, (1908).   A defense is not part of a plaintiff's properly pleaded statement of his or her claim. See *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, (1987); *Gully v. First Nat. Bank in Meridian*, 299 U.S. 109, 112, (1936) [a suit brought upon a state statute does not arise under an Act of Congress or the Constitution of the United States merely because it is **prohibited** thereby].

Thus, "a case may not be removed to federal court on the basis of a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case."

19

*Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 14, (1983).

As set forth in above, Plaintiffs' complaint raises only well- established state law claims; it cannot plausibly be construed as artful pleading that omits a necessary federal question related to plaintiffs' state law claims.  There is no doubt that Section 301 simply does not preempt state common law or statutory claims.

## V.    *FALCONS SHOULD PAY PLAINTIFF'S ATTORNEY'S FEES AND COSTS FOR THE REMOVAL PROCEEDINGS*

Plaintiff has requested that Falcons, as the removing party, pay all costs, including attorney's fees, incurred by reason of the removal proceedings.  An order remanding the case may require payment of just costs and actual expenses, including attorneys fees, incurred as a result of the removal.  28 U.S.C. §1447(c). See, also, *Morris v. Bridgestone/Firestone, Inc.*, 985 F.2d 238 (6th Cir. 1993) [removal followed by remand warrants an award of attorneys fees]; *Gray v. N.Y. Life Ins. Co.*, 906 F.Supp. 628 (N.D. Ala.) [good faith is no defense to a 28 U.S.C. §1447(c) fee claim].

The removal of this case to federal court calls for payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal under 28 U.S.C. §§ 1447(c); see *Moore v. Permanente Medical Group, Inc.*, 981 F.2d 443, 446 (9th Cir. 1992). In exercising its discretion to award costs and

attorney's fees, the Court should consider whether removal was improper, looking both at the nature of the removal and of the remand. See *Id*.

The purpose of an award is not to punish the removing party but instead to reimburse the party who sought remand for litigation costs incurred as a result of unnecessary removal. See *Id*. at 447. The availability of costs and attorney fees replaces the former requirement of posting of a bond; however, it serves the same purpose – to discourage improper removal. *Dead Kennedys v Biafra*, 46 F.Supp.2d 1028, 1030 (N.D. Cal. 1999). Even if the Court finds the removal was "fairly supportable" an award of costs and fees is within the Court's discretion when the removal was "wrong as a matter of law." *Balcorta v. Twentieth-Century-Fox Film Corp.*, 208 F.3d 1102, 1106, n.2 (9th Cir. 2000).

## VI.   CONCLUSION

Federal jurisdiction either exists at the time of removal or it does not. Post-removal events have no effect on whether jurisdiction exists. *Burns v. Windsor Ins. Co., supra,* 31 F.3d at fn.12. Indeed, "Congress has recognized and accepted that, in some circumstances, plaintiff can and will intentionally avoid federal jurisdiction." *Ibid.*

It is the defendant's burden to prove that federal jurisdiction exists. A defendant either meets this burden or it does not. Here, the Falcons have failed to prove that federal jurisdiction exists. At most, they may assert a federal defense to

Jackson's state law claims but this is not sufficient to confer jurisdiction under 28 U.S.C. §1331.

This case must be remanded to the State Court of Fulton County. In addition, Jackson should recover his attorneys fees and costs incurred in this Court, including not only the expense of this Motion to Remand but also all other attorneys fees and costs removed case pending remand to State Court.

This 21st day of May, 2007.

Respectfully submitted,

s/Kenan G. Loomis
Kenan G. Loomis, Esquire
Georgia Bar No. 457865
COZEN O'CONNOR
SunTrust Plaza, Suite 2200
303 Peachtree Street, N.E.
Atlanta, Georgia  30308
Telephone:  (404) 572-2000
Facsimile:  (404) 572-2199
Attorney for Plaintiff