IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **GRADY JACKSON,** | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | NO.  07-cv-0939-GET |
| | ) | |
| v. | ) | |
| | ) | |
| **ATLANTA FALCONS** | ) | |
| **FOOTBALL CLUB, LLC,** | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF GRADY JACKSON'S
OPPOSITION TO THE FALCONS'
MOTION TO DISMISS OR COMPEL ARBITRATION
[FRCP 12(b)(1)]**

Plaintiff GRADY JACKSON ("Jackson") hereby submits his preliminary opposition to the motion of Defendant ATLANTA FALCONS FOOTBALL CLUB, LLC ("Falcons") to dismiss Plaintiff's claims or, in the alternative, to compel arbitration.

In presenting this opposition, Jackson does not acquiesce in the jurisdiction of this Court, which Jackson disputes (as set forth in his Motion to Remand).

## I. INTRODUCTION

Plaintiff Grady Jackson is a professional NFL football player under contract with Defendant Falcons, and is considered to be one of the premiere Defensive Tackles in the National Football League. Jackson's career began over ten years ago, at the Oakland Raiders Football Club, and he has also played for the New Orleans Saints and the Green Bay Packers. In March 2006, Jackson was an unrestricted free agent looking for a new contract and was invited to visit the Defendant Atlanta Falcons.

Jackson visited the Falcons on March 24, 2006. The Falcons arranged various tests and medical examination to assess his physical condition. One of the examining physicians (Dr. Brown) suggested to the team that a further work-up by a cardiologist be obtained. The Falcons told Jackson and his sports agent, Angelo Wright, that they had concerns regarding the heart test and wanted to see further testing before a decision was made. No one associated with the Falcons or any of the health care providers stated or even suggested to Jackson that he had "failed" his medical or physical examination or that the team was not interested in signing him. Both Jackson and his agent were left with the impression that a decision had not been made, one way or the other, regarding whether the Falcons would sign Plaintiff to play for the team.

Two days later (March 26), Falcons personnel told a reporter for KFFL (a prominent national sports wire service and internet site) that Jackson had "failed" his physical and released private personal health information concerning Jackson. That same day, KFFL reported publicly that Jackson had "failed" his physical with the Falcons. Falcons personnel made similar statements to a writer for the Sporting News (a prominent weekly sports publication). The following week, an article in the Sporting News reported to the general public that Jackson had "failed" his physical. The story (that Plaintiff had "failed" his physical with the Atlanta Falcons) was picked up by the national press and republished in numerous venues. The press reports included private personal health information regarding Jackson's (alleged) heart problems.

Through these press reports, Jackson learned that he had "heart problems;" as a result, Jackson and his wife became very concerned about his health. The press reports also adversely affected interest of other NFL teams in signing Jackson; when visiting other teams, Jackson was questioned about his "heart condition" and two teams conducted extensive cardiology examinations. Jackson's agent eventually opened negotiations with the Falcons and in August 2006, nearly five months after he first visited the Falcons, Jackson signed a three-year contract. In the 2006 season, Jackson was the only member of the

Falcon's defensive line to start all 16 games, and he led all defensive linemen in tackles for loss.  After the end of the season, Jackson filed this action for invasion of privacy and defamation in State Court.

The Falcons removed Jackson's suit to this Court by asserting federal question jurisdiction under LMRA §301, claiming that resolution of Jackson's claims require interpretation of the grievance provisions and remedies in the NFL Collective Bargaining Agreement ("CBA"), as a result of which Defendant Falcons claim that this Court has original jurisdiction pursuant to 28 U.S.C. §1331.

The Falcons filed an Answer in this Court and also a motion to dismiss or, in the alternative, to compel arbitration.  Jackson disputes the subject matter jurisdiction of this Court to entertain this action and has filed a Motion to Remand the cause to State Court of Fulton County, State of Georgia.

### II.    THIS COURT LACKS JURISDICTION OVER THIS CAUSE, AND THEREFORE CANNOT HEAR THE FALCONS' MOTION

Jackson disputes the subject matter jurisdiction of this Court to entertain this action and has just filed a Motion to Remand the cause to State Court of Fulton County, State of Georgia.

The federal courts are courts of limited jurisdiction. *Burns v. Windsor Ins. Co.*, 31 F.3d 1095 (11th Cir. 1994). For the reasons set forth in the Motion to Remand (to which reference is hereby made), this case was wrongly removed and there is no subject matter jurisdiction for this case under 28 U.S.C. §1331 or 28 U.S.C. §1441.

Accordingly, this motion must not be heard until after the Court has adjudicated Jackson's Motion to Remand. Jackson respectfully requests that all proceedings on the Falcons' Motion to Dismiss be stayed pending determination of Jackson's Motion to Remand.

## II. JACKSON'S CLAIMS ARE NOT COVERED BY THE NFL COLLECTIVE BARGAINING AGREEMENT

Disputes subject to the grievance procedure contained in the NFL Collective Bargaining Agreement ("CBA") are those which the "interpretation of, application or, or compliance with" a provision of the CBA, the NFL Player Contract, or any applicable provision of the NFL Constitution and Bylaws pertaining to the terms and conditions of employment of NFL Players." CBA Article IX § 1. Jackson's state-law tort claims for invasion of privacy and defamation do not come within those parameters, and the Falcons have cited no specific reference to the CBA (or other documents) showing that they do.

The covenant not to sue is limited to suits against the NFL or a Club "with respect to a claim relating to any conduct permitted by [the CBA] . . . or any term of [the CBA]."  CBA Article IV§ 2   Nothing in the CBA prohibits a suit against either the NFL or a Club arising out of an independent state-law tort claim.  See, e.g., *Stringer v. National Football League*, 474 F.Supp.2d 894 (S.D. Ohio, February 1, 2007).  In that case, the widow of an NFL player who died from complications of heatstroke sued the NFL, team physician, and those involved and the design and manufacture of the team's football equipment.  Mrs. Stringer's 4th Court was against the NFL and its trademark licensing arm, NFL Properties, for negligence for failure to ensure that the equipment and materials it required players to wear was of the highest possible quality and sufficient to protect the players from the risk of injury (including the unnecessarily increased risk of heat-related illness).  *Stringer v. National Football League, supra*, 474 F.Supp.2d at 912.  The district court judge denied the NFL's motion to dismiss as to the 4th Count,[1] finding that the claims asserted in the 4th Count did not arise out of the CBA, and that any duty imposed on the NFL "clearly has its source in the common law."  *Ibid*.  For the same reasons, the district court in *Stringer*

---

[1] The district court did find some of Mrs. Stringer's other count were so intertwined with the CBA as to be subject to dismissal or arbitration.

concluded that those claims were not subject to arbitration under the CBA. *Stringer v. National Football League, supra*, 474 F.Supp.2d at 913.

Neither is Jackson's claim a disguised action for failure to negotiate in good faith over compensation (which is subject to the non-injury grievance procedures, under CBA Articles XXXVII §§ 8 and 9). At the time of the acts complained of, Jackson and the Falcons were not in negotiation; Jackson had merely visited the team on free agent day. Moreover, there could not have been a grievance, because the 45-day period expired before Jackson even began his negotiations with the Falcons.

The mere fact that Jackson's state-law claims arise from what the Falcons describe [in their Motion, p.9] as "the same set of operative facts" does not mean Jackson's claims arise under the CBA. A plaintiff may choose his forum, and plead accordingly. Moreover, a party may deliberately choose to pursue his state-law claims and ignore others. *Burns v. Windsor Ins. Co., supra,* 31 F.3d at fn.12. The fact of the matter is that the claims that Jackson has alleged do NOT arise under the CBA and do NOT require interpretation of the CBA to resolve them. Jackson has chosen to allege state-law tort claims for invasion of privacy and defamation.[2] Nothing in the Falcons' moving papers establishes that

---

[2] In fact, proof of the state-law torts plead by Jackson encompasses different factual elements than the "failure to negotiate in good faith" claims

7

Jackson does not have his independent state-law tort claims for invasion of privacy and defamation.

Finally, the Falcons advance an argument that the CBA requires players to arbitrate the question of whether the dispute must be arbitrated. Such an argument not only goes far beyond the four corners of the CBA, but wrongly suggests that any dispute a player has with his team has to be arbitrated. The potential application of such a position reveals its preposterousness: under the Falcon's view of the world, a player would lose his constitutional right to jury trial and be forced to arbitrate his personal injury claim if a member of the team's management ran the player down in the stadium parking lot. Such a construction is simply not supportable under the law. Jackson is entitled to have his claims tried to a jury, and is not subject to either compulsory arbitration or dismissal as to the claims alleged in his Complaint filed in State Court.

Similarly, the Falcons' contention (in their Motion, p.15) that Jackson's claims "at least 'arguably' fall within the scope of the CBA's arbitration

---

suggested by the Falcons. Invasion of privacy, for example, requires proof of the matter made public must be offensive and objectionable to a reasonable man of ordinary sensibilities under the circumstances. *Napper v. Ga. Television Co.*, 257 Ga. 156, 161, 356 S.E.2d 640 (1987); *Nelson v. Glynn-Brunswick Hosp. Authority*, 257 Ga.App. 571, 578 (2002). Defamation requires a showing of malice and lack of privilege. Ga. Code Ann. §§ 51-5-4(a)(3), 51-5-5, 51-5-6, 51-5-7.

provision" is off the mark.  The fact that the Falcons think Jackson might have brought a grievance for failure to negotiate in good faith does not mean that he cannot bring his independent state-law tort claims for invasion of privacy and defamation.  These claims arose at the time of the tortuous acts.  Jackson had these state law claims before he started negotiating with the Falcons. Importantly, Jackson had state-law tort claims for the invasion of privacy and defamation **whether or not he ever** entered into negotiations with the Falcons or signed with them.  **These claims were not extinguished** simply because Jackson agreed, in August 2006, to play for the Falcons.

Jackson is not "ask[ing] the court to have the Falcons supplement his compensation," nor is he "seek[ing] damages for the Falcons' alleged failure to negotiate in good faith," as suggested in the Falcons' motion, at p.17.  As explained in Jackson's Motion to Remand, his claim for invasion of privacy arises from the Georgia Constitution (Art. 1, § 1, Par. 1) and his defamation claim arises from Georgia statutory law (O.G.C. §§ 51-5-4(a)(3), 51-5-5, 51-5-6 and 51-5-7).  These state law claims are independent of the CBA and are not subject to arbitration.

## V. CONCLUSION

For the reasons set forth above and in his Motion to Remand, Jackson disputes the subject matter jurisdiction of this Court to entertain this action and this Motion, and requests that the Court stay all proceedings on this motion pending determination of Jackson's Motion to Remand.

In addition, should this Court ultimately determine to hear this Motion, Jackson requests he be allowed to supplement his opposition and that the motion be denied for the reasons set forth above.

This 21st day of May, 2007.

Respectfully submitted,

s/Kenan G. Loomis
Kenan G. Loomis, Esquire
Georgia Bar No. 457865
COZEN O'CONNOR
SunTrust Plaza, Suite 2200
303 Peachtree Street, N.E.
Atlanta, Georgia 30308
Telephone: (404) 572-2000
Facsimile: (404) 572-2199
Attorney for Plaintiff