## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **GRADY JACKSON,** | ) | |
| | ) | **CIVIL ACTION** |
| **Plaintiff,** | ) | |
| | ) | **NO: 07-CV-0939-GET** |
| **v.** | ) | |
| | ) | |
| **ATLANTA FALCONS** | ) | |
| **FOOTBALL CLUB, LLC** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S RESPONSE IN OPPOSITION
## TO PLAINTIFF'S MOTION TO REMAND AND FOR COSTS

Plaintiff's Motion to Remand ignores the relevant case law, the language in his own First Amended Complaint and multiple provisions of the Collective Bargaining Agreement ("CBA") between the NFL Players Association ("NFLPA") and the NFL Management Council ("NFLMC") by which he is bound.   While Plaintiff attempts to disguise his claims as torts, they are fundamentally disputes governed by the CBA.

Even if Plaintiff's state-law claims are taken at face value, however, their resolution is substantially dependent on an analysis and interpretation of the CBA. Thus, Plaintiff's claims are completely pre-empted by the Labor Management Relations Act ("LMRA"), and this Court has original jurisdiction pursuant to 28

Dockets.Justia.com

U.S.C. § 1331.  Indeed, the threshold issue of whether Plaintiff is allowed to litigate these claims in any court, State or Federal, or must pursue them in arbitration, is governed by the CBA.

## FACTS AND PROCEDURAL HISTORY

I.    **Background Facts.**[1]

At the end of the 2005 National Football League ("NFL") season, Plaintiff Grady Jackson ("Plaintiff" or "Jackson") was an unrestricted free agent.  (Affidavit of Nick Polk "Polk Aff." ¶ 4.)   The Falcons invited Plaintiff to visit the Falcons' facility, but required him to take a physical examination prior to discussing a contract.  (Polk Aff. ¶ 7.)  Plaintiff visited the Falcons on March 24, 2006, and underwent a thorough physical examination.  (Polk Aff. ¶ 8.)  As part of the exam, Plaintiff was sent to a cardiologist who administered an Echocardiogram.  (Polk Aff. ¶ 11, Ex. D.)  The results of the test were sufficiently troubling for the Falcons to request that Plaintiff undergo additional heart tests.  (Polk Aff. ¶ 12.)  Plaintiff refused, and for that reason the Falcons did not enter into contract discussions with him at that time.  (Polk Aff. ¶ 13.)

---

[1] The facts of this case are set forth in detail in the Falcons' Motion to Dismiss, or Alternatively, to Compel Arbitration; a condensed version is provided here.

On or about March 26, 2006, George Henry, a reporter for KFFL (a sports news service) and for the Sporting News apparently reported that Plaintiff had "failed" his Falcons physical. (Am. Compl. ¶ 12.) At no time did the Falcons state to anyone that Plaintiff had "failed" his physical. (Polk Aff. ¶ 14.)

In early August 2006 Jackson consented to undergo the additional cardiac tests. (Id. ¶ 15.) The test results resolved the Falcons' concerns, and on August 24, 2006, Jackson signed a three-year contract to play football for the Falcons. (Id. ¶ 16.)

Shortly after the end of Jackson's first season with the Falcons, his agent, Angelo Wright, suggested that Plaintiff was underpaid and began insisting that the Falcons renegotiate the three-year contract Jackson signed less than a year earlier. (Id. ¶ 19.) Wright claimed that the Falcons were disrespecting Jackson as a "player and a man," and threatened to drop a "bomb" that would "embarrass the club and Arthur Blank, the Falcons' owner," if the Falcons did not offer Jackson a new contract. (Id. ¶ 20.) When the Falcons refused to renegotiate Jackson's contract, this lawsuit ensued.

Plaintiff has been, and is currently, a member of the NFLPA, a bargaining unit organized under the National Labor Relations Act and the sole and exclusive bargaining representative for NFL players. (Id. ¶ 21.) All NFL players (including

free agents) are members of the bargaining unit.  (Id.[2])  CBA Preamble § 2

(covering "[a]ll professional football players who have been previously employed

by a member club of the National Football League who are seeking employment

with an NFL Club.").  As the sole and exclusive bargaining representative of such

players, and on their behalf, the NFLPA entered into the CBA with the NFLMC,

the sole and exclusive bargaining representative of NFL teams, including the

Atlanta Falcons.

The CBA is over 300 pages and covers virtually every aspect of the

relationship between the players and NFL teams, including, among other things,

NFL player contracts, salary provisions, and rules governing contract negotiation.

The CBA also includes a dispute resolution process that mandates the procedures

to be followed in the event of a dispute regarding compliance with the terms of the

CBA, the NFL's Constitution and Bylaws, and the NFL's standardized players'

contract (the "NFL Player Contract") (CBA Article IX § 1).  In exchange for that

collectively bargained for dispute resolution process, the NFLPA and NFLMC

agreed that no NFL player would file suit against any NFL club.  (CBA Article IV

§ 2.)

---

[2] A true and correct copy of the CBA is attached to the previously-filed Affidavit of
Nick Polk as Exhibit H.

## II.    <u>Procedural History.</u>

Plaintiff filed a Complaint and First Amended Complaint in Fulton County State Court on March 23 and March 27, 2007, respectively.  The summons and both the Complaint and First Amended Complaint were served on the Falcons on March 27, 2007.  The Falcons removed the case to this Court on April 26, 2007 and, at the same time, answered the First Amended Complaint.  On April 27, 2007 the Falcons filed its Motion to Dismiss, or in the Alternative, to Compel Arbitration ("Motion to Dismiss") (Doc. No. 4).  On May 21, 2007, Plaintiff filed a Motion to Remand (Doc. No. 11),[3] a Response to the Falcons' Motion to Dismiss, (Doc No. 12), and objections to certain evidence presented by the Falcons in support of its Motion to Dismiss (Doc. No. 13).

<u>ARGUMENT AND CITATION OF AUTHORITIES</u>

A matter filed in state court may be removed to federal court if the case could originally have been filed in federal court.  28 U.S.C. § 1441(a).  Federal district courts have original federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331; see 28 U.S.C. § 1441(b).  "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that

---

[3] Plaintiff's Motion to Remand is cited herein as Plaintiff's Brief ("Pl.'s Br.")

federal jurisdiction exists only when a federal question is presented on the face of the plaintiff [s'] *properly* pleaded complaint." <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392 (1987) [emphasis added].

While a defendant cannot "inject[ ] a federal question into an action that asserts what is plainly a state-law claim" in order to establish federal jurisdiction, the well-pleaded complaint rule is not without its exceptions. <u>Id.</u> at 399. For instance, the complete preemption doctrine, an "independent corollary" to the well-pleaded complaint rule, can "convert[ ] an ordinary state common law complaint into one stating a federal claim." <u>Metropolitan Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 65 (1987). Complete preemption occurs when Congress "so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." <u>Id.</u> at 63-64. If a complaint asserts a state law claim pertaining to an area of law that has been completely preempted, any claim purportedly based on that pre-empted state law is considered to be a federal claim arising under federal law. <u>Caterpillar</u>, 482 U.S. at 393 (the theory behind complete preemption is that "the pre-emptive force of a statute is so 'extraordinary' that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint . . . rule.") (quoting <u>Metropolitan Life Ins. Co.</u>, 481 U.S. at 65)); <u>see also</u> <u>Franchise Tax Bd. v. Constr. Laborers Vacation</u>

Trust, 463 U.S. 1, 24 (1983).  This case is preempted by Section 301 of the LMRA. [4]

## I.    Preemption under Section 301 of LMRA.

Section 301 of the LMRA is paradigmatic of the complete preemption doctrine.  See Caterpillar, 482 U.S. at 393 ("The complete pre-emption corollary to the well-pleaded complaint rule is applied primarily in cases raising claims pre-empted by section 301 of the LMRA.").  Section 301 has been interpreted as "a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts."  Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209 (1985).  It is well established that Section 301 completely preempts state law claims, including tort claims, that involve the interpretation of a collective bargaining agreement.  United Steelworkers of Am. v. Rawson, 495 U.S. 362, 368-369 (1990); Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-407 (1988) (a plaintiff's claim is construed as federal in nature

---

[4] Section 301 states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organization, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185.

if its resolution "depends upon the meaning of a collective-bargaining agreement" or "require[s] construing the collective-bargaining agreement.").

## II.    Plaintiff's Claims are Preempted by Section 301.

### A.    The resolution of Plaintiff's claims depends upon the meaning of and requires the Court to construe the CBA.

A state law claim can "depend" on the "meaning" of a collective bargaining agreement in two ways.  First, a claim qualifies if it alleges conduct that constitutes a breach of a duty that arises pursuant to a collective bargaining agreement. Rawson, 495 U.S. at 369 ("[A] state-law tort action against an employer may be pre-empted by § 301 if the duty to the employee of which the tort is a violation is created by a collective-bargaining agreement and without existence independent of the agreement.").  Second, a claim is preempted if its resolution arguably hinges upon an interpretation of the collective bargaining agreement.  Allis-Chalmers Corp., 471 U.S. at 220 (finding section 301 preemption "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract").

"If a state-law claim depends on the meaning of the collective bargaining agreement . . . under Rawson's 'duty' rubric or under the Allis-Chalmers's 'interpretation' rubric-it is preempted."  Flibotte v. Pennsylvania Truck Lines, Inc., 131 F.3d 21, 26 (1st Cir. 1997); DeCoe v. General Motors Corp., 32 F.3d 212, 216

(6th Cir. 1994);  Agee v. Huggins, 888 F. Supp. 1573, 1580 (N.D. Ga. 1995) (Hull,

J.) (adopting standard and citing DeCoe)); [5]  McCormick v. AT&T Techs. Inc., 934

F.2d 531, 534-35 (4th Cir. 1991).

Here, the resolution of Plaintiff's tort claims is substantially dependant upon,

and requires the Court to interpret the CBA.   Plaintiff alleges that the Falcons

released false information regarding his physical condition in order to:

> enhance the Atlanta Falcon's [sic] leverage in ***negotiating a contract***
> with [Jackson], to chill any interest by other NFL teams in signing []
> Jackson and to reduce and impede [] Jackson's marketability in the
> free agent market so that [the] Atlanta Falcons would later be able to
> sign [] Jackson for considerably less money than his true market
> value.  (emphasis added.)

(Am. Compl. ¶ 14.)  Plaintiff further alleges that the purported disclosure was

made to "deprive[] [Plaintiff] of the ability to ***negotiate favorable contract terms***

as a free agent and [that Plaintiff] was signed later in the training season at a

---

[5] In Bartholomew v. AGL Res., Inc., 361 F.3d 1333 (11th Cir. 2004), the Eleventh
Circuit addressed Section 301 preemption in the context of claims for breach of
contract, intentional infliction of emotional distress, tortious interference with
business relations, and defamation.  The Court needed to address only the so called
Allis-Chalmers's "interpretation" rubric in finding that some of the claims were
preempted and some were not.   The Bartholomew court found that certain claims
were not preempted because the actions occurred after the plaintiff had left the
company and was not covered by the CBA *at all*.  Bartholomew, 361 F.3d at 1341
(defamation and tortuous interference claims not preempted because they occurred
after plaintiff left and was no longer subject to the CBA).  Contrary to Plaintiff's
argument, Bartholomew does not dictate the resolution of this case (see Pl.'s Br. at
17), because at all times before, during and after the alleged torts, Plaintiff in this
case was subject to the CBA.  (CBA Preamble § 2.)

compensation and on terms below the fair market value for a player of his skills

and experience."  (Id. ¶ 28) (emphasis added).  Thus, the gravamen of this lawsuit

is Plaintiff's dissatisfaction with his current contract, his desire to renegotiate a

new contract, and his assertion that the Falcons did not deal with him in good faith.

These issues are specifically governed by, dependent upon and require

interpretation of the CBA.

> Article XXXVIII § 8 of the CBA states that:

> A player will be entitled to receive a signing or reporting bonus,
> additional salary payments, incentive bonuses, and such other
> provisions as may be negotiated between his Club . . . and the player
> or his . . . agent.  The Club and the player or his . . . agent will
> negotiate in good faith over such other compensation . . .

> The very next section of the CBA specifically provides that disputes over

compensation and whether the parties to compensation negotiations have

negotiated in good faith are subject to arbitration.  (CBA Article XXXVIII § 9.)

Thus, interpretation of the CBA are inextricably intertwined with the resolution of

Plaintiff's claims and therefore are preempted by Section 301 of the LMRA.

> Moreover, the damages Plaintiff seeks require application and interpretation

of the CBA, because awarding the damages Plaintiff seeks would violate the CBA

and Jackson's NFL Player Contract. [6]   Plaintiff has specifically alleged that his damages occurred when "he was deprived of the ability to negotiate favorable contract terms as a free agent and was signed later in the training season at a compensation and on terms below the fair market value for a player of his skills and experience." (Am. Compl. ¶ 28.)[7]   Thus, the damages Jackson seeks are nothing more than additional compensation he believes he should have been granted during his contract negotiations.

Whether such damages can be awarded certainly requires the interpretation and application of (1) Section 21 of the NFL Player Contract, which provides that such agreement " . . . sets forth the entire agreement between Player and Club and cannot be modified or supplemented orally . . . , " and (2) the impact such damages might have on the NFL's rigidly enforced Salary Cap system (See CBA Article

---

[6] The standardized NFL Player Contract is actually part of the CBA and is attached to the CBA as Appendix C.  Article XIV § 1 of the CBA provides that the NFL Player Contract form attached as Appendix C to the CBA must be used for all player signings.  Because the CBA incorporates the standardized NFL Player Contract, the agreements are considered together for purposes of preemption analysis.  Sherwin v. Indianapolis Colts, Inc., 752 F. Supp. 1172, 1177-78 (N.D. N.Y. 1990).

[7] A Plaintiff must prove damages (whether general or specific) for both invasion of privacy and defamation.   See Williams v. Church's Fried Chicken, Inc., 279 S.E. 2d 465, 470 (Ga. 1981); Cabaniss v. Hipsley, 151 S.E.2d 496, 503 (Ga. 1966). Here, the express harm pled is additional contractual compensation Plaintiff claims he would have received had the Falcons not allegedly released his medical information.  (Am. Compl. ¶¶ 14, 28.)

XXV § 1).[8]   Any damages - special or general - would place the Falcons in the untenable position of being subject to a Court judgment, the satisfaction of which might violate the CBA and potentially subject the Falcons to discipline from the NFL.  For this reason, whether the CBA's salary cap presents a complete bar to any damages Plaintiff might seek under the facts he has alleged is clearly something that requires interpretation and application of the CBA.

### B.    Plaintiff cannot escape federal jurisdiction through artful pleading.

While Plaintiff's First Amended Complaint is couched in terms of state-law torts and avoids direct mention of federal law, "[t]he artful-pleading doctrine, a corollary to the well-pleaded-complaint rule, rests on the principle that a plaintiff may not defeat federal subject-matter jurisdiction by 'artfully pleading' his complaint as if it arises under state law where the plaintiff's suit is, in essence, based on federal law."  Sullivan v. American Airlines, Inc.,  424 F.3d 267, 271 (2d Cir. 2005) (citing Rivet v. Regions Bank of La., 522 U.S. 470, 475-76 (1998) and

---

[8] The NFL CBA is different from the typical collective bargaining agreement because it contains caps on the amount of money that can be paid by teams to players.   This rather unique fact compels the preemption of tort claims like those brought by Plaintiff because the damages he seeks could implicate the salary cap. Forty-four (44) pages of the CBA are devoted exclusively to salary cap matters and a significant potion of the remainder of the CBA is devoted to the economic relationship between the player and team.

Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 22

(1983)).

Federal courts are cognizant of the fact that a plaintiff may attempt to hide a

federal claim by use of carefully drafted language, and therefore, will look beyond

the language of the complaint to determine the appropriateness of removal:

> The [artful pleading] doctrine empowers courts to look beneath the
> face of the complaint to divine the underlying nature of a claim, to
> determine whether the plaintiff has sought to defeat removal by
> asserting a federal claim under state-law colors. . . . If the claim
> appears to be federal in nature . . . then the federal court must
> recharacterize the complaint to reflect that reality and affirm the
> removal despite the plaintiff's professed intent to pursue only state-
> law claims.

BIW Deceved v. Local S6, Indus. Union of Marine and Shipbuilding Workers,

132 F.3d 824, 831 (1st Cir. 1997);  Sullivan, 424 F.3d at 271-72 ("Faced with such

an artfully (i.e., misleadingly) pleaded complaint, the federal court may construe

the complaint as if it raised the federal claim that actually underlies the plaintiff's

suit.") (citing Rivet, 522 U.S. at 475)); see also 14 James Wm. Moore et al.,

Moore's Federal Practice ¶ 81.04 (Matthew Bender 3d ed. 2006); In re Carter, 618

F.2d 1093, 1101 (5th Cir. 1980) ("[T]he accepted rule in this circuit is that upon

removal the removal court should inspect the complaint carefully to determine

whether a federal claim is necessarily presented, even if the plaintiff has couched

his pleading exclusively in terms of state law."); Patterman v. Travelers, Inc., 11

F. Supp. 2d 1382, 1388 (S.D. Ga. 1997) (Alaimo, J.) (artful pleading doctrine

provides an independent basis for removal where state law claim is completely pre-

empted).

　　　The Fifth Circuit Court of Appeals found LMRA preemption with respect to

similar claims by two NFL players in <u>Smith v. Houston Oilers</u>, 87 F.3d 717, 720

(5th Cir. 1996).　In <u>Smith</u>, the team offered to settle the contracts of two injured

players instead of cutting them from the team.　When the players refused the

settlement offer, the team allegedly required the players to participate in unusual

and rigorous "rehabilitation" activities, some of which allegedly occurred in the

middle of the night, included humiliating exercises, or included verbal abuse.　<u>Id.</u>

at 718-719.　The players thereafter sued the club for the torts of coercion, duress,

extortion, assault, battery and intentional infliction of emotional distress.　<u>Id.</u> at

719.

　　　Like Plaintiff, the players in <u>Smith</u> argued that their tort claims were

independent from the CBA, because the CBA could not in any way condone the

conduct alleged to have been engaged in by the Oilers.　The Fifth Circuit rejected

that argument, recognizing that "the alleged misconduct cannot be separated from

the underlying dispute between the players and the Oilers over the adequacy of the

Oilers' offer of termination pay." <u>Id.</u> at 720.　Plaintiff's First Amended Complaint

presents the identical situation -- the Falcons alleged misconduct cannot be

separated from the underlying dispute over whether Jackson is entitled to

additional pay from the Falcons as a result of the team's alleged failure to negotiate

his contract in good faith.   Here, as in <u>Smith</u>, because "the labor dispute [over the

players' contracts] is at the heart of the players' complaints, we think that those

complaints are not too peripheral a concern for the federal labor laws."  <u>Id.</u> at 720.

As in <u>Smith</u>, the Falcons' alleged negotiating tactics cannot be separated from the

underlying dispute over the fairness of Jackson's contract, something which "is

fundamentally a labor dispute."  <u>Id.</u>  Here, as in <u>Smith</u>, Plaintiff's claims are

clearly based upon his Player Contract and the CBA, and are inextricably

intertwined with them, despite being characterized in his First Amended Complaint

as torts.


       **C.**    **Plaintiff's claims are preempted by § 301 of the LMRA because they require interpretation of the arbitration provision contained in the CBA.**

Section 301 of the LMRA preempts this case, aside from any interpretation

of Plaintiff's underlying claims, because this particular CBA expressly reserves to

an arbitrator the question of whether Plaintiff's claims are governed by the CBA.

The CBA provides that any non-injury dispute "involving the interpretation of,

*application of*, or compliance with any provision of this Agreement, [or] the NFL

Player Contract . . . [shall be subject to arbitration].  (CBA Article IX § 1)

[emphasis added].[9]   Where, as here, a court is required to interpret the scope of an

arbitration provision -- including whether the arbitration clause reserves issues

related to its scope to the arbitrator -- the court must necessarily interpret, refer to,

or rely upon the language of the CBA, and therefore the matter is preempted.  See

Morris v. Local 804, Int'l Brotherhood of Teamsters, No. 05-0358-cv, 2006 U.S.

App. LEXIS 1500, at *231 (2d Cir. Jan. 18, 2006) (holding that a claim that a

dispute was not properly arbitrable under a CBA "require[s] an analysis of the

CBA, and thus arise[s] under federal law."); Vera v. Saks & Co., 218 F. Supp. 2d

490, 493 (S.D.N.Y. 2002) (holding that because § 301 of the LMRA preempts not

only claims alleging a violation of a CBA, but also "those state-law actions that

require interpretation or substantial analysis of the terms of a [CBA] . . .

---

[9] This language requires that questions as to the CBA's scope and a whether a dispute is arbitrable be decided by an arbitrator.  See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943-44 (1995) (as a matter of federal law, parties can reserve the question of arbitrability to an arbitrator; whether they have done so is determined by applicable state contract law). Only to the extent federal law does not apply, the CBA is governed by New York law (CBA Article LIX), and in New York a broad arbitration provision such as contained in this CBA -- i.e., where questions of "applicability" are expressly reserved -- means that the arbitrator must decide what disputes are arbitrable.  Oriental Republic of Uruguay v. Chem. Overseas Holdings, Inc., Nos. 05 Civ.6151(WHP), 05 Civ.6154 (WHP) 2006 WL 164967 (S.D. N.Y. Jan. 24, 2006).

interpretation of the arbitration clause . . . is governed by federal law."); <u>see</u> <u>e.g.</u>

<u>Int'l Longshore and Warehouse Union Local 142 v. Foodland Supermarket Ltd.</u>,

No. 04-00035 HG-LEK, 2004 U.S. Dist. LEXIS 17253, at * 13 (D. Haw. Apr. 30,

2004) ("Because resolution of the state claim involves interpreting the arbitration

clause of the CBA § 301 preempts this claim."); <u>Lingle</u> 486 U.S. at 405-407 (1988)

(a claim is preempted if its resolution "require[s] construing the collective-

bargaining agreement.").

     In this situation, the standard to apply in determining arbitrability (and *ergo*,

LMRA preemption) is whether "the [s]ubject matter of the dispute is arguably

arbitrable (resolving all doubts in favor of coverage)." <u>See</u> <u>Ala. Power Co. v. Local</u>

<u>Union No. 391, Int'l Brotherhood of Elec. Workers</u>, 612 F.2d 960, 963 (5th Cir.

1980);[10] <u>accord</u>, <u>Vera</u>, 218 F. Supp. 2d at 493.  Thus, the fact that a question of

arbitrability of Plaintiff's claims exists with respect to this particular CBA -- and

particularly whether that question has been reserved for the arbitrator -- preempts

---

[10] Decisions of the Fifth Circuit prior to October 1, 1981 are binding on courts in the Eleventh Circuit.  <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1211 (11th Cir. 1981).

any "arguably arbitrable" state law claims and vests this Court with original jurisdiction.[11]

## III.    The Plaintiff Has No Right to Costs and Attorneys' Fees Under 28 U.S.C. 1447(c).

Plaintiff has no basis for seeking costs or fees because this matter was properly removed.   If the Court decides otherwise, however, the Supreme Court recently addressed the legal standard to be applied when courts consider whether to award attorneys' fees based upon a remand.  Martin v. Franklin Capital Corp., 126 S. Ct. 704 (2005).  The Court held that "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal."  Id. at 708.  The Court's aim was to balance the desire of Congress "to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied."  Id. at 711.

The Falcons removal was "objectively reasonable" based upon the facts and circumstances of this case and Plaintiff's allegations in the First Amended Complaint.  Id. at 708.  The Falcons based its removal in good faith on a

---

[11] Plaintiff's claims are certainly "arguably arbitrable," as discussed in detail in the Falcons' Memorandum of Law and Reply in Support of its Motion to Dismiss, or in the Alternative, to Compel Arbitration.  [Doc. No. 4.]

procedurally correct basis founded on the extensive and well settled law of LMRA preemption.  In stark contrast, Plaintiff's argument for fees and costs does not even mention the <u>Martin</u> case, and provides no arguments that the Falcons acted unreasonably or that there are unusual circumstances which would dictate the award of costs or fees.  Thus, even if the Court were to remand this case (which it should not), there is no basis for having the Falcons pay Plaintiff's fees and costs pursuant to 28 U.S.C. § 1447(c).

## CONCLUSION

Plaintiff's Motion to Remand should be denied.  This Court has original jurisdiction over this case and it should remain before this Court.

This 8th day of June, 2007.

Respectfully submitted,

s/ Michael W. Johnston
Michael W. Johnston
Georgia Bar No. 396720
Matthew A. Boyd
Georgia Bar No. 027645
Amanda C. Kunz
Georgia Bar No. 142177

KING & SPALDING LLP
1180 Peachtree Street NE
Atlanta, Georgia 30309-3521
(404) 572-4600 (telephone)
(404) 572-5138 (facsimile)
mjohnston@kslaw.com

mboyd@kslaw.com
akunz@kslaw.com

**ATTORNEYS FOR THE ATLANTA FALCONS
FOOTBALL CLUB, LLC**

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1B</u>

I, Amanda C. Kunz, hereby certify that **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND AND MOTION FOR COSTS** has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1B.

s/ Amanda C. Kunz_____<br>Amanda C. Kunz

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **GRADY JACKSON,** | ) | |
| | ) | **CIVIL ACTION** |
| **Plaintiff,** | ) | |
| | ) | **NO: 07-CV-0939-GET** |
| **v.** | ) | |
| | ) | |
| **ATLANTA FALCONS** | ) | |
| **FOOTBALL CLUB,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of June, 2007, I electronically filed **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND AND MOTION FOR COSTS** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney of record:

> Kenan G. Loomis
> COZEN O'CONNOR
> SunTrust Plaza, Suite 2200, 303 Peachtree Street, N.E
> Atlanta, Georgia 30308

I also here certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

> Eric Farber and Ann McFarland Draper
> FARBER & COMPANY ATTORNEYS LLP
> 847 Sansome Street, Suite LL
> San Francisco, California 94111

> s/ Mathew A. Boyd
> Matthew A. Boyd