# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| GRADY JACKSON, ) | |
| ) | CIVIL ACTION |
| Plaintiff, ) | |
| ) | NO: 07-cv-0939-GET |
| v. ) | |
| ) | |
| ATLANTA FALCONS ) | |
| FOOTBALL CLUB, LLC ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION

In his opposition to the Falcons' Motion to Dismiss Or, In The Alternative, To Compel Arbitration (the "Motion"), Plaintiff does little to dispute the relevant law requiring that his claims be submitted to mandatory and binding arbitration.[1] Instead, Plaintiff argues that his claims are "independent" and do not require interpretation of the CBA, despite the fact that the plain language of the First Amended Complaint demonstrates the opposite. Plaintiff's *post-hoc* attempt to re-

---

[1] The Falcons object to Plaintiff's contention that he is submitting his "preliminary opposition" to the Falcons' Motion. [Doc. No. 12] (Pl. Resp. at 1). Neither the Federal Rules nor the Local Rules permit Plaintiff to file multiple oppositions to the Falcons' Motion, and the Falcons object to any further opposition briefs being filed.

characterize his claims to avoid arbitration must be rejected, and the Falcons' Motion should be granted.

**ARGUMENT AND CITATION OF AUTHORITIES**

**I.   Whether Plaintiff's claims must be arbitrated is a question for the arbitrator.**

The CBA in this case contains a broad arbitration clause that requires players to arbitrate:

> Any dispute … arising after the execution of this Agreement and involving the interpretation of, *application of*, or compliance with, any provision of this Agreement, the NFL Player Contract, or any applicable provision of the NFL Constitution and Bylaws pertaining to terms and conditions of employment of NFL players . . .

CBA Article IX § 1 (emphasis added).

Plaintiff ignores controlling U.S. Supreme Court and Eleventh Circuit precedent in contending that the arbitration provision contained in the CBA cannot reserve the question of arbitrability to an arbitrator. (Pl. Resp. at 8.) See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943-44 (1995) (parties can reserve the question of arbitrability to an arbitrator; whether they have done so is determined by applicable state contract law); Scott v. Prudential Sec., Inc., 141 F.3d 1007, 1011 (11th Cir. 1998) (same; following Kaplan).  Except to the extent federal law applies, the CBA is governed by New York law (CBA Article LIX),

and in New York the presence of a broad arbitration provision such as contained in this CBA -- i.e., where questions of "applicability" are expressly reserved -- means that the arbitrator decides whether a dispute is arbitrable. Oriental Republic of Uruguay v. Chemical Overseas Holdings, Inc., Nos. 05 Civ. 6151(WHP), 05 Civ. 6154 (WHP), 2006 WL 164967 (S.D. N.Y. Jan. 24, 2006).

Plaintiff's argument that the application of this principle would require a player to "lose his constitutional right to jury trial and be forced to arbitrate his personal injury claim if a member of the team's management ran the player down in the stadium parking lot" is a red herring. (Pl. Resp. at 8.) Arbitration is a matter of contract law, and a party cannot be compelled to arbitrate if he has not agreed to do so. AT&T Techs., Inc. v. Communication Workers of Am., 475 U.S. 643, 648 (1986). Here, however, the NFLPA representing Plaintiff agreed to an arbitration provision that requires the arbitrator to decide whether a dispute is covered by the CBA, a situation expressly endorsed by the U.S. Supreme Court in Kaplan.

Permitting the arbitrator to determine whether claims are subject to arbitration does not cause a player to "lose his constitutional right to jury trial," as Plaintiff contends. (Pl. Resp. at 8.) It is well settled that when one agrees to arbitrate, as Jackson has done here, the right to go to court is waived. See AT&T

Techs., Inc., 475 U.S. at 648.  If Plaintiff's argument were accepted, *no* arbitration agreement would ever be enforceable.

## II. Plaintiff's claims are arbitrable.

Even if the Court were to decide the issue of arbitrability, the presence of the CBA's broad arbitration clause alone creates a strong presumption that Plaintiff's claims must be arbitrated.[2]  Id. at 649-50 (citing United Steel Workers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960));  see also United Steelworkers of Am. v. Simcala, Inc., 111 F. Supp. 2d 1287, 1291 (M.D. Ala. 2000) ("[T]he presence of an arbitration clause creates a presumption of an agreement to arbitrate *all* issues.").   Because there is no express provision in the arbitration clause excluding Plaintiff's claims, "only the most forceful evidence of a purpose to exclude the claim[s] from arbitration can prevail."  Warrior & Gulf Navigation Co., 363 U.S. at 584-85.  In circumstances such as these, the Supreme Court has instructed that "'[a]n order to arbitrate . . . should not be denied unless it

---

[2] Plaintiff's argument that his claims are not subject to the arbitration provision because he was not in negotiations with the Falcons at the time of the alleged statements is without merit, as is his argument that his state law claims should not be extinguished because he eventually entered into negotiations with the Falcons and agreed to play for them. (Pl. Resp. at 7, 9.)  The CBA applies to "all professional football players who have been previously employed by a member club of the National Football League who are seeking employment with an NFL club" regardless of whether they eventually sign with the team they are discussing employment with, or any team at all. CBA Preamble § 2.  Plaintiff has never contended he was not a member of the NFLPA.

4

may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute,'" and "[d]oubts should be resolved in favor of coverage." AT&T Techs., Inc., 475 U.S. at 650 (quoting Warrior & Gulf, 363 U.S. at 582-83).

### A. Article XXXVII §§ 8 and 9 of the CBA require arbitration of Plaintiff's claims.

Despite Plaintiff's protestations to the contrary, it is clear that his claims involve "the interpretation of, application of, or compliance with" the CBA and his NFL Player Contract.[3] As an initial matter, Plaintiff's claims require "the interpretation of, application of, or compliance with" Article XXXVIII, § 8 of the CBA, which relates to contract negotiations and compensation:

> A player will be entitled to receive a signing or reporting bonus, additional salary payments, incentive bonuses, and such other provisions as may be negotiated between his Club . . . and the player or his . . . agent. The Club and the player or his . . . agent will negotiate in good faith over such other compensation . . .

---

[3] Plaintiff's contention that the Falcons failed to make any "specific reference to the CBA" (Pl. Resp. at 5) requiring arbitration ignores reality. In its original brief, and in its Response to Plaintiff's Motion for Remand (and in this Reply), the Falcons have identified no less than five different sections of the CBA, plus Plaintiff's NFL Player Contract, that must be construed for the resolution of his claims. These include the CBA sections regarding contract negotiations (Article XXXVIII §§ 8-9), arbitrability (Article IX § 1); Non-Suit (Article IV § 2), and the Salary Cap (Article XXIV).

Plaintiff's argument that he intentionally pled only state law tort claims instead of a violation of the CBA (Pl. Resp. at 7) misses the mark. Just as he may not escape federal question jurisdiction by "'artfully pleading' his complaint as if it arises under state law where [it] is, in essence, based on federal law," Sullivan v. Am. Airlines, Inc., 424 F.3d 267, 271 (2d Cir. 2005) (citations omitted), he cannot evade the arbitration clause through artful pleading. See Ivax Corp. v. B. Braun of Am., Inc., 286 F.3d 1309, 1318 (11th Cir. 2002); Coffman v. Provost 7 Umphrey Law Firm, 161 F. Supp. 2d 720, 732 (E.D. Tex. 2001).[4]

Plaintiff disingenuously argues that he is not seeking additional contractual compensation from the Falcons. (Pl. Resp. at 7, 9.) But the First Amended Complaint specifically alleges that the Falcons released false information about Plaintiff's physical condition to "enhance the Atlanta Falcon's (sic) leverage in negotiating a contract with [Jackson]," and "to chill any interest by other NFL teams in signing [ ] Jackson . . . so that [the] Atlanta Falcons would later be able to sign [ ] Jackson for considerably less money than his true market value." (Am. Compl. ¶ 14.) Plaintiff specifically seeks damages based on the allegation that "he was deprived of the ability to negotiate favorable contract terms as a free agent and

---

[4] The "artful pleading doctrine" is discussed in detail at pages 12-15 in the Falcons' Response to Plaintiff's Motion for Remand. Plaintiff's couching what are clearly claims for additional contractual compensation as purported "tort" claims is a quintessential example of "artful pleading."

was signed later in the training season at a compensation and on terms below the fair market value for a player of his skills and experience." (Am. Compl. ¶ 28.[5])

Plaintiff cannot escape the plain language of his own pleadings to avoid arbitration -- this dispute is about Jackson's dissatisfaction with his Player Contract with the Falcons, and nothing more. The CBA specifically provides that disputes over compensation and whether the parties to compensation negotiations have negotiated in good faith are subject to arbitration. (CBA Article XXXVIII § 9.) Plaintiff cannot avoid this express requirement, and his claims must be dismissed.

### B.   Plaintiff's damages claims are barred by the CBA.

Moreover, even if they are treated as purported "tort" claims, the resolution of Plaintiff's claims requires interpretation of the CBA. Plaintiff's Response makes only the conclusory statement that neither his defamation nor his invasion of privacy claims require CBA analysis. Plaintiff's conclusion is wrong, as the resolutions of both claims require interpretation and application of the CBA.

The NFL CBA is different from the typical collective bargaining agreement because it contains strict caps on the amount of money that can be paid by teams to players. This rather unique fact compels the arbitration of tort claims like those brought by Plaintiff because the damages he seeks could implicate the NFL Salary

---

[5] Indeed, in his Response, Plaintiff reiterates that the alleged statements "adversely affected interest (sic) of other NFL teams in signing Jackson …" (Pl. Resp. at 3.)

Cap.  Indeed, forty-four (44) pages of the CBA are devoted exclusively to salary cap matters and a significant portion of the CBA is devoted to the economic relationship between the player and team.  By suing the Falcons for damages related to contract negotiations, Plaintiff attempts to disavow that bargained-for relationship.

A common element of the torts of invasion of privacy and defamation is that they seek damages from the defendant to compensate for some harm -- here, the express harm pled is additional contractual compensation Plaintiff claims he would have received had the Falcons not allegedly released his medical information. (Am. Compl. ¶¶ 14, 28.)  Plaintiff must prove those damages as part of both claims.  See Williams v. Church's Fried Chicken, Inc., 279 S.E.2d 465, 470 (Ga. 1981) (evidence did not support damages); Cabaniss v. Hipsley, 151 S.E. 2d 496, 503 (Ga. 1966) (in spite of liability, no damages).  For invasion of privacy, Plaintiff seeks general damages (Am. Compl. ¶ 22); for his defamation claim Plaintiff has pled that he suffered both special and general damages.  (Am. Compl. ¶¶ 27-29.)  "Special damages are those which actually flow from a tortious act; they must be proved in order to be recovered."  OCGA § 51-12-2(b).  Additionally, "[s]pecial damages must be proven with sufficient particularity for the jury to

estimate the amount thereof with reasonable certainty." Sanders v. Brown, 571 S.E.2d 532, 536 (Ga. 2002).

Plaintiff has specifically alleged that his damages occurred when "he was deprived of the ability to negotiate favorable contract terms as a free agent and was signed later in the training season at a compensation and on terms below the fair market value for a player of his skills and experience." (Am. Compl. ¶ 28.) However characterized, the damages Jackson seeks are nothing more than additional compensation he believes he should have been granted during his contract negotiations. Whether such damages can be awarded certainly requires the interpretation and application of (1) Section 21 of the NFL Player Contract,[6] which provides that such agreement " . . . sets forth the entire agreement between Player and Club and cannot be modified or supplemented orally . . . , " and (2) the impact such damages could have on salary cap (See CBA Article XXV § 1). Additionally, to prove special damages,[7] Plaintiff would have to provide analysis

---

[6] The standardized NFL Player Contract is actually part of the CBA and is attached to the CBA as Appendix C. Article XIV § 1 of the CBA provides that the NFL Player Contract form attached as Appendix C to the CBA must be used for all player signings. Because the CBA incorporates the standardized NFL Player Contract, the agreements are considered together for purposes of preemption analysis. Sherwin v. Indianapolis Colts, Inc., 752 F. Supp. 1172, 1177-78 (N.D. N.Y. 1990).

[7] In his brief Plaintiff mistakenly assumes the alleged statement that he "failed his physical" is slander *per se*, in this case defined as, "making charges against another

9

of the salary cap data rules and regulations from the CBA, as they applied to the Falcons and other NFL teams at the time of the alleged harm in order to prove his "fair market value." Sanders, 257 Ga. App. at 569 (special damages must be proven with particularity).

Any damages - special or general - would place the Falcons in the untenable position of being subject to a Court judgment, the satisfaction of which might violate the CBA and potentially subject the Falcons to discipline from the NFL. For that reason, whether the CBA's salary cap presents a complete bar to any damages Plaintiff might seek under the facts he has alleged is fundamental to the CBA and must be decided by the arbitrator.

### C. The CBA's No-Suit Clause bars Plaintiff's claims.

Finally, Plaintiff's claims implicate Article IV § 2 of the CBA, which provides that players will not sue "any Club with respect to any claim relating to any conduct permitted by [the CBA] . . . or any term of the [CBA]." The case

---

in reference to his trade, office, or profession, calculated to injure him therein." O.C.G.A. § 51-5-4(3). While this statement does not meet the Georgia requirements for slander *per se*, see Bellemead, LLC v. Stroker, 631 S.E. 2d 693, 695-96 (Ga. 2006), a full inquiry is not necessary for remand analysis. All slander *per se* does is alleviate the requirement to *plead* special damages. Even if Plaintiff were to show slander *per se*, he would still have to: 1) prove special damages with certainty to a fact finder. O.C.G.A. § 51-12-2(b); 2) rely heavily on the CBA to demonstrate those damages; and 3) refer to the CBA and Player Contract to determine whether or not payment of any damages is allowed.

10

Plaintiff relies on in support of his theory that the non-suit clause does not apply -- <u>Stringer v. NFL</u>, 474 F. Supp. 2d 894 (S.D. Ohio 2007) -- is distinguishable. First, the <u>Stringer</u> court noted that Count IV of the plaintiff's complaint was against the NFL and NFL Properties, neither of whom were signatories to the CBA or had any rights imposed on them by the CBA to ensure that the equipment used by NFL players was adequate to protect against injury. 474 F. Supp. 2d at 912. Here, the dispute is between a player and his team, clearly parties to the CBA.

Second, the <u>Stringer</u> court stated that the CBA was silent on the topic of equipment safety, the substance of Count IV of the plaintiff's complaint. <u>Id.</u> Here, the CBA contains specific provisions regarding how Clubs and players must negotiate a player's compensation, and how much a team may pay its players, which, as stated above, is precisely what this lawsuit is about.

## **CONCLUSION**

Whether Plaintiff's claims are arbitrable has clearly been reserved to the arbitrator pursuant to the CBA, and therefore the Court should summarily dismiss this case in favor of the CBA's arbitration procedures. Moreover, resolution of Plaintiff's claims clearly would require the "interpretation of, application of, or compliance with" multiple provisions in the CBA, and therefore the arbitration

clause is susceptible of an interpretation that requires arbitration of Plaintiff's claims. Accordingly, the Falcons' Motion should be granted.

This 8th day of June, 2007.

                                      Respectfully submitted,

                                      <u>Michael W. Johnston</u>
                                      Michael W. Johnston
                                        Georgia Bar No. 396720
                                        Matthew A. Boyd
                                        Georgia Bar No. 027645
                                        Amanda C. Kunz
                                        Georgia Bar No. 142177

KING & SPALDING LLP
1180 Peachtree Street NE
Atlanta, Georgia 30309-3521
(404) 572-4600 (telephone)
(404) 572-5138 (facsimile)
mjohnston@kslaw.com
mboyd@kslaw.com
akunz@kslaw.com

**ATTORNEYS FOR THE ATLANTA FALCONS FOOTBALL CLUB, LLC**

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1B

I, Amanda C. Kunz, hereby certify that **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION** has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1B.

s/ Amanda C. Kunz
Amanda C. Kunz

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| GRADY JACKSON, | ) | |
| | ) | CIVIL ACTION |
| Plaintiff, | ) | |
| | ) | NO: 07-CV-0939-GET |
| v. | ) | |
| | ) | |
| ATLANTA FALCONS FOOTBALL CLUB, | ) | |
| | ) | |
| Defendant. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of June, 2007, I electronically filed **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney of record:

    Kenan G. Loomis
    COZEN O'CONNOR
    SunTrust Plaza, Suite 2200, 303 Peachtree Street, N.E
    Atlanta, Georgia 30308

I also here certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

    Eric Farber and Ann McFarland Draper
    FARBER & COMPANY ATTORNEYS LLP
    847 Sansome Street, Suite LL
    San Francisco, California 94111

                                          s/ Matthew A. Boyd
                                          Matthew A. Boyd